## The Peoria Marine and Fire Insurance Company v. Daniel W. Perkins.

*Policy of Insurance: Construction.* The policy of insurance in this case was upon a stock of boots and shoes, and provided that the application should be taken and deemed to be a warranty on the part of the assured, and should so remain during the insurance, and that it was made and accepted in reference to the conditions annexed, to be used and resorted to in order to explain the rights and obligations of the parties in cases not therein otherwise provided for. The conditions provided for continuing the policy in life by renewal, for sharing the loss, if any, with any other company having a risk on the same property and for cancelling the policy at the election of the company, for any cause. It was also provided by the conditions that in taking applications the agent of the company should be held as agent for the applicant, and that in case of renewal the policy should be considered as continued under the original warranty in so far as it should not be waived by a new warranty. Upon the trial, a witness for the insured testified that there was $1,500 additional insurance in the North American Insurance Company, on the stock of "boots and shoes, leather, shoemakers' findings and materials, and such other articles as are usually kept in a boot and shoe store"; that such policy covered leather and findings, upon which there was a loss, which was deducted from the amount of the sum insured. On cross-examination the witness was asked, "What amount of insurance did you have on leather and shoemakers' findings in the North American Insurance Company at the time of the fire?" This question was objected to as immaterial, and the objection sustained.

*Held,* That there was no error in this ruling, as the second policy contained no specification of the amount insured in leather or shoemakers' findings, or both, and it must have been impossible to state the amount insured on any particular items unless the whole sum of $1,500 should have been considered as such amount.

PEORIA MARINE AND FIRE INSURANCE CO. *v.* PERKINS.

*Suit on Policy of Insurance: Evidence: General Issue: Affidavit of merits.* The plaintiff declared upon the policy as issued in August, 1864, and continued by renewal until August, 1866, and the policy and renewal certificate were put in evidence. The company offered to prove that the plaintiff was at the renewal of said policy, and for some time before, had been the agent of the company, and that the original policy was cancelled, and that the renewal certificate, if given at all, was fraudulently given by the plaintiff after the fire, which was objected to as incompetent and immaterial. The court below held the testimony admissible to affect the credit of the plaintiff as a witness, but inadmissible for any other purpose.

*Held,* That there was no error in this ruling of which the company could complain. The policy and instrument of renewal constituted the contract sued upon, and since they were in writing their due execution as alleged could not be questioned under the plea of the general issue without the affidavit prescribed by rule 79. The renewal, if well executed, as admitted by the plea, gave life to the policy which continued to the time of the fire, even though there had been a cancellation prior to the renewal.

*Internal Revenue Law: Collectors certificate, where stamp is omitted.* The assignment of the policy to plaintiff, together with the certificate of the collector of internal revenue of the stamping of the assignment was admitted in evidence under objection. The assignment contained an agreement stamp.

*Held,* That the evidence was competent. The action of the collector is, in a limited sense, judicial, and no collateral inquiry into the grounds of it could be permitted. His certificate partakes of the character of the act, and more resembles the memorial of a judicial determination than an ordinary official certificate, and may be admitted within the principle which allows various public documents, surveys, plats, entries and the like, to be given in evidence; and that the assignment was shown by legal evidence to have been properly stamped.

*Held, further,* That the power contained in the assignment to collect the insurance was entirely nugatory, since the same authority it assumed to have existed without it, and therefore no *additional* stamp was required.

*Policy of insurance: Misrepresentation.* In the application for the policy, the assured, in reply to certain questions, answered that "the building was used for stores," and further that there were "two tenants."

The preliminary proof showed that the buildings were used as stores, and that the second story and garret were "used as sleeping rooms, and for no other purpose whatever."

*Held,* That the statement in said proof was not inconsistent with the truth of the representations in the application.

*Policy of insurance: Construction.* The policy in this case referred to the conditions for an explanation of the rights and obligations of the parties in all cases not otherwise provided for in the policy itself.

Those conditions required that the application should specify the situation of the building containing the goods "with respect to contiguous buildings and their construction and materials," while neither the policy or conditions required the application to set forth the distance between any buildings, nor required a diagram, or defined the word "contiguous."

The policy was issued, and referred to the application as follows: "All as particularly described in the application of the assured now on file."

The application contained the following question and answer: Q. Describe all other buildings, and how occupied, and all other exposures to fire, their distance from risk and from each other within one hundred and fifty feet?" A. "North, nothing within one hundred and twenty feet;

east, fifty feet to small building; south, ninety feet to across street; west, sixty-six feet to brick hotel across street." A diagram was also furnished, exhibiting two streets crossing each other, and the site of the hotel and the place where the goods were.

*Held*, That as the company issued the policy on the application, it must be considered that the description in the said answer and diagram was regarded as a substantial compliance with the policy and conditions.

*Heard April 8th.   Decided April 14th.*

Error to Bay Circuit.

This was an action of assumpsit, brought to recover damages on a policy issued by plaintiff in error to Messrs. Leidlein & Burger, and by them assigned to defendant in error.

Defendant pleaded the general issue and gave notice of special matter.

A verdict was rendered for the plaintiff below.

The facts are stated in the opinion.

*I. Marston,* for plaintiff in error.

*John W. McNamara,* for defendant in error.

GRAVES J.

This is a writ of error to the Circuit Court for the county of Bay.

The suit was brought in the court below against the plaintiffs in error by Daniel W. Perkins as assignee of a policy of insurance, issued by the plaintiffs in error on the 26th day of August, 1864.

The policy was for $1,500 on a stock of boots and shoes in a building in East Saginaw, to continue from August 26, 1864, to August 26, 1865.

It provided that the application should be taken and deemed to be a warranty on the part of the assured, and should so remain during the insurance, and that it was made and accepted in reference to the conditions annexed to be used and resorted to, in order to explain the rights and obligations of the parties in cases not therein otherwise provided for. The conditions provided for continuing the

policy in life by renewal, for sharing the loss, if any, with any other company having a risk on the same property, and for cancelling the policy at the election of the company for any cause.

It was also provided by the conditions that in taking applications the agent of the company should be held as agent for the applicant, and that in case of renewal the policy should be considered as continued under the original warranty in so far as it should not be varied by a new warranty. The case was tried by a jury, who returned a verdict against the company for eight hundred and eighty-eight dollars and seven cents damages.

Upon the trial, Burger, one of the insured, testified for the plaintiff that there was $1,500 additional insurance in the North American Insurance Company on the stock of boots and shoes, leather, shoemaker findings and materials, and such other articles as are usually kept in a boot and shoe store; that such policy covered leather and findings upon which there was a loss of $447 55, which was deducted from the $1,500.

Upon cross-examination on the part of the company, the following question was put to the witness: "What amount of insurance did you have on leather and shoemakers' findings in the North American Fire Insurance Company at the time of the fire"? To this question the plaintiff's counsel objected on the ground of immateriality, and the court sustained the objection, and the defendant's counsel excepted; and this is the first error assigned.

The policy issued by the North American Company was an open one, containing no specification of the amount insured on leather or shoemakers' findings, or both, but it simply insured to the amount of $1,500 on the "stock of boots and shoes, leather, shoemakers' findings and materials, and such other articles as are usually kept in a boot and shoe store." It must have been impossible, then, to state the amount insured on any particular items, unless the

whole sum of $1,500 should have been considered as such
amount. The question, however, seems to have been in-
tended to elicit a statement by the witness of some amount
less than the whole as applying to the particular items
mentioned, and as the case was not susceptible of any such
answer the question was properly over-ruled.

The plaintiff in his declaration counted upon the policy
as issued in August, 1864, and continued by renewal until
August, 1866, and on the trial submitted in evidence the
policy and instrument of renewal.

Testimony having been given on the part of the plaint-
iff to show that he was at the time of the renewal, and
for some time theretofore had been, the agent of the
company, the latter offered several items of testimony, and
consisting chiefly of entries in the insurance register of said
plaintiff, with the avowed purpose of proving that the origi-
nal policy was cancelled, and that the renewal receipt, if
given at all, was fraudulently given by the plaintiff after
the fire.

The plaintiff opposed the admission of this testimony as
incompetent and immaterial, and the court held the testi-
mony admissible to affect the credit of the plaintiff as a
witness, and inadmissible for any other purpose; and this is
the second error assigned.

It is very evident that the policy and instrument of re-
newal constituted the contract on which the action was
brought; and since these were in writing, their due execu-
tion as alleged could not be questioned by the company
under their plea of the general issue without the affidavit
prescribed by rule seventy-nine. No such affidavit appears
to have been made. When the party makes no such affi-
davit, it is an admission that he does not mean to contest
the fact, and by such admission he is bound. The conse-
quence must be that the policy and renewal must both be
taken as having been duly executed as alleged. Such being
the case, there could be no occasion to inquire as to a

supposed cancellation of the policy before the renewal, inasmuch as the latter, if well executed, as admitted, gave life to the former, which continued to the time of the fire.

There was nothing therefore in this decision of which the company can complain.

All the other material questions in the case are raised by the refusal of the court to charge as requested, and are covered by the third assignment of error.

The first point to be noticed under this head, is founded on objections by the defendants to the admission in evidence of the assignment of the policy to the plaintiff, together with the certificate of the collector of internal revenue of the stamping of the assignment.

These objections were in substance that the certificate was not evidence, and that the agreement stamp upon the assignment was insufficient, inasmuch as the assignment contained a power to collect the insurance, and the instrument in respect to that remained unstamped.

By the act of Congress approved July 13, 1866, authority was conferred upon the collector to remit the penalty and affix the appropriate stamp within the time prescribed by the act, when it should appear to him on oath, or otherwise to his satisfaction, that the omission to stamp was the result of accident, mistake, inadvertence, or urgent necessity, and without any willful design to defraud the United States of the duty, or to evade or delay the payment of it.

The act further provides that, in case the instrument is so stamped, it may be used in all courts and places in the same manner and with the like effect as if it had been rightly stamped when made or issued. In the present case the assignment was stamped as an agreement in pursuance of this provision.

It will be observed that the authority confided in the officer by the act of Congress, is to be exercised in his discretion, upon an examination of facts of which he is constituted the exclusive judge; and it is believed that, in the

absence of any controlling provision, his decision upon those facts must be conclusive. His action is, in a limited sense, judicial, and certainly no collateral inquiry into the grounds of it could be permitted.

His certificate partakes of the character of the act, and more resembles the memorial of a judicial determination, than an ordinary official certificate. It derives confidence from the circumstance that it is made by an authorized public officer, in the ordinary discharge of his duty as such, and in a matter concerning the government.

The refusal to receive it in evidence in such cases as the present, would produce great embarrassment and injustice. It would often necessitate the compulsory attendance of these officers as witnesses when possible, at places many hundred miles distant, at great expense to parties, and with serious detriment to the public service. If their attendance or testimony could not be secured by reason of their absence, or otherwise, it is not perceived how the proof could be supplied if the certificate should be held incompetent.

On the whole, it is conceived that the certificate may be admitted within the principle which allows various public documents, surveys, plats, entries, and the like, to be given in evidence. See cases in *Cowen and Hill's notes* (*note* 804).

The objection that the power contained in the assignment was unstamped, is sufficiently answered by saying that the power itself was totally nugatory, since the same authority it assumed to give would have existed without it. It was not offered in evidence as a power, and had no more effect upon the case than blank paper.

If it became evidence at all, it must have been as an integral part of the assignment, and if that was the case, no additional stamp was required.

These views lead to the conclusion that the assignment was shown by legal evidence to have been properly stamped. The plaintiffs in error have mainly relied upon supposed

breaches by the assured of warranties made by the latter in applying for the policy.

These warranties are found by bringing together the language of the policy, the conditions as they are called, and the application. The policy and conditions were made by the company, and contained what they stipulated to do, and what they stipulated for; and the application referred to in the policy and conditions, consisted of questions put by the company to the applicants, and the answers thereto by the latter. Those parts of the policy and conditions essential to the present purpose, with a single exception to be noticed hereafter, have been already mentioned.

The seventh question in the application was as follows: "For what purpose used?" alluding to the building containing the property to be insured. The answer was, "it is used for stores." The eighth question was: "How many tenants?" and the answer was, "two." It is contended on the part of the company that the preliminary proofs showed that "divers parties slept in the same building," and that the foregoing answers were thereby shown to have been untrue.

On turning to the preliminary proofs, we find it stated "that the building containing the property destroyed was occupied in its several parts by the parties hereinafter named and for the following purposes, to wit: The east half of the lower story by said deponent as a retail boot and shoe store and shop; the west half of the lower story by Francis Otto, as a retail tobacco and cigar store and news room; the second story and garret *as sleeping rooms*, and for no other purpose whatever." It is upon this, and this alone, that the company asked the court to believe that "divers parties slept in the same building," and that the answers to the seventh and eighth questions were accordingly untrue. The statement in the preliminary proofs would be satisfied if the tenants themselves slept occasionally in the rooms over their stores; and surely it could not

be argued that by so doing the foregoing answers would be falsified. If the company would defeat a recovery on the ground stated, they could only do so by proving the delinquency. It would not be presumed.

It was further maintained, on the part of the company, that in answering the twenty - fourth question in the application, and in making a diagram on the latter, the applicants became warrantors of the correctness of the answer and plan, and that both answer and diagram were actually untrue. As already stated, the policy referred to the *conditions* for an exposition of the rights and obligations of the parties in *all cases* not otherwise provided for in the *policy itself*.

If in obedience to this express stipulation we turn to the conditions for light on the point now presented, we find it provided in condition numbered four and a half, that the application should specify the situation of the building containing the goods, with *respect to contiguous buildings and their construction and materials,* while neither the policy or conditions required the application to state the distance between any building, or required the applicant to make any diagram, or in any manner defined the meaning of the word "contiguous."

In accordance with these provisions, the application was made and filed in the office of the company. The policy was thereupon issued with an express reference to the application in the following words: "All as particularly described in the application of the assured numbered 25 on file in the office of this company."

The application so made and filed, and on which the company issued the policy, contained the question and answer alluded to.

The question was as follows: "Describe all other buildings, and how occupied, and all other exposures to fire; their distance from risk and from each other, within one hundred and fifty feet." The answer was, "North, nothing

within one hundred and twenty feet; east, thirty feet to small building; south, ninety feet to across street; west, sixty-six feet to brick hotel across street."

There was also a diagram on the back of the application, exhibiting two streets crossing each other, and the site of the brick hotel and the place where the goods were.

Since the company issued the policy upon this application, the inference seems irresistible that the description in the foregoing answer and in the diagram was regarded as a substantial compliance with the policy and conditions.

The conduct of the parties amounted to a practical construction of that passage in the condition last quoted, and may be considered as declaring that the buildings mentioned in the answer were not " contiguous" in any sense requiring a statement of their construction or materials.

It was manifest that the answer to the twenty-fourth question did not assume to describe all the buildings within one hundred and fifty feet, or to give the construction or materials of those mentioned; and yet the company accepted the application in this regard as sufficient, and there was nothing in the policy or conditions to render this course incompetent or improper.

This view of the "obligation" of the assured, to use the language of the policy, is an answer to the claim that the reply to the twenty-fourth question, and the diagram, conconstituted a warranty which was broken, and disposes of the only remaining questions in the case which are at all material.

The judgment of the court below is affirmed, with costs to the defendant in error.

COOLEY CH. J. and CAMPBELL J. concurred.

CHRISTIANCY J. did not sit.