# The Clay Fire and Marine Insurance Company v. The Huron Salt and Lumber Manufacturing Company.

*Declaration on insurance policy: Execution admitted: Circuit court rule 79.* Where a declaration counts on a policy of insurance, and no affidavit is filed denying its execution, the execution of the policy is thereby under circuit court rule 79 admitted, and no evidence need be introduced to prove it.

*Insurance policy : Foreign companies: State regulations: Estoppel.* In an action upon an insurance policy issued by a foreign company upon property in this state, it is not necessary to prove that the company had authority under our laws to transact business in this state ; but the company is estopped to deny its authority, or to defend against its contract upon any such ground.

*Declaration: Insurance policy: Statement of place of execution : Variance.* Under a declaration counting on a policy and stating under a *videlicet* that it was made in this state, without the usual statement preceding it of the actual place of its execution, proof of a policy made in Illinois is not a fatal variance in a case where it is certain the defendant was not misled or surprised ; our rule in regard to declaring on policies was intended to get rid of such refinements in this class of cases.

*Insurance: Personal contract: Realty: Local laws: Foreign companies.* A contract of insurance upon buildings is personal, and not real ; and the circumstance that the liability to pay is made to depend upon an event to real property here does not make the contract a Michigan contract, or in any legal sense make this state the place of performance by the insurance company ; nor does the fact that the contractee is a Michigan corporation impress upon the contract the quality of locality so as to cause our laws as to business done here by agents of foreign companies to affect it in point of law.

*Insurance: Foreign companies: State regulations: Contracts made abroad.* The statute (*Comp. L., 1871*, § 1683) regulating the transaction of the business of insurance in this state by the agents of foreign companies, does not assume to forbid the making of contracts of insurance abroad upon property here, nor does it assume to invalidate such contracts, but applies only to operations within the state.

*Insurance: Foreign companies : State regulations: Contracts.* Whether or not this statute could be construed to operate to render void at the election of insurers such insurances as they may effect here without compliance with its restrictions :— *Quære ?*

*Declaration: Plaintiff: Use and benefit of another: Surplusage.* The use of the phrase "for the use and benefit of" some person named other than the plaintiff, in the commencement of a declaration immediately following the name of the plaintiff, where no assignment is set forth and no allusion made in the body of the declaration to any other interest or title than such as the plaintiff held, has no force to make the issue different from what it would have been if the phrase had been left out.

*Insurance: Policy : Direction as to payment: Evidence.* The occurrence in a policy, of a direction to pay the loss, if any, to some one other than the insured named in it, as his interest may appear, does not necessitate the proof, in an action on the policy by the insured, of any interest owned or held by such person in the insured property.

CLAY FIRE & MARINE INS. CO. *v.* HURON SALT & LUMBER
MANUFACTURING CO.

*Insurance: Policy: Title of insured: Realty: Contract of sale.* Where a policy
   requires the fact to be stated if the title of the assured is any thing less than
   a sole, unconditional and entire ownership, and provides that it shall be inop-
   erative if this requirement be not complied with, and the only statement in it
   of the title is by the word "their" prefixed to the description of the property,
   proof that the assured had at the time contracted to sell the premises, and
   that their vendee had paid the entire purchase price, would defeat the policy.
*Offers to prove: Practice.* Where an offer to prove certain matters stated is
   refused, the case must be considered on error precisely as though the facts pro-
   posed to be shown had been established.

                                         *Heard January 26.   Decided February 26.*

Error to Bay Circuit.

*Holmes, Haynes & Stoddard,* for plaintiff in error.

*McDonell & Cobb* and *Hoyt Post,* for defendant in error.

GRAVES, CH. J.

The last named company sued the former to recover on
a policy of insurance against loss by fire, and having suc-
ceeded in the court below, the insurance company now seek
a review by this court of several rulings at the trial. The
trial was before a jury, and the re-examination is asked
upon a bill of exceptions brought up on writ of error.

The suit was begun by declaration, which embraced the
general counts in assumpsit, and one special count in which
the defendant in error assumed to set forth the true
main features of the contract of insurance. The com-
mencement of the declaration was in these terms: "County
of Bay, ss.: The Huron Salt & Lumber Manufacturing
Company, a corporation formed and existing under the
laws of the state of Michigan, plaintiff herein *for the use
and benefit of George C. Smith,* by McDonell & Cobb, its
attorneys, complains of the Clay Fire and Marine Insurance
Company, a corporation formed and existing under the
laws of the state of Kentucky, defendant herein, of a plea
of trespass on the case on promises, filing this declaration
as commencement of suit."

This statement in the commencement, that the Salt and Lumber Company was *plaintiff*, was not departed from in setting out the cause of action. The general counts were in the usual form, and the special count set out a contract between the companies, and averred no transfer. The special count alleged that "on the second day of April, A. D. 1873, to wit: at Bay City, in said county of Bay, the defendant made a certain policy of insurance in writing, by and through its agent, H. Martin, whereby the said defendant, in consideration of the sum of thirty-seven dollars and fifty cents, to it paid by the plaintiff, did insure the said plaintiff against loss or damage by fire, to the amount of fifteen hundred dollars, on its one-story frame salt-block, and on kettles, pumps, steam-pipes and such tools and implements as were used in the manufacture of salt, contained therein, situated about forty feet from its steam saw-mill at Salzburg, Bay county, Michigan (said plaintiff being the owner, and in possession of said property), and the said defendant, in consideration of the said sum of thirty-seven dollars and fifty cents, did in said policy of insurance, promise and agree with the said plaintiff, to make good to the said plaintiff all such immediate loss or damage by fire, not exceeding in amount the said sum of fifteen hundred dollars, nor the interest of the plaintiff in said property, as should happen to the said property from the second day of April, A. D. 1873, at 12 o'clock noon, to the second day of April, A. D., 1874, at 12 o'clock noon, the amount of such loss or damage, to be paid sixty days after due notice and proof of the same, according to the terms and conditions of said policy." The count then proceeded to aver, that "on the 22d day of June, A. D. 1873, the said policy or contract of insurance being then in full force, and the plaintiff being then the owner and in possession of said property," the same was burned, whereby "the plaintiff" suffered loss and damage to wit,—thirty thousand dollars, of which the defendant had due notice and proof, etc., in

accordance with the provisions of the policy; and that by
reason of the premises, the defendant, to wit: on the first
day of October, A. D. 1873, at Bay City, in said county of
Bay, became and was indebted to the plaintiff, etc., according
to the terms of said contract, and in consideration thereof
then and there undertook and faithfully promised to pay to
said plaintiff, etc.; that, nevertheless, the defendant neglects
and refuses to pay said plaintiff, etc., to the great damage of
the plaintiff, etc.

No copy of the policy appears to have been given with
the declaration, but it may be well, before alluding to the
defense, to notice some of its provisions.   After describing
the property insured as "*their* one-story frame salt-block,"
etc., and stating that other insurance was permitted, it
went on to say: "loss payable to George C. Smith, of Chi-
cago, Illinois, as his interest may appear;" and further on
it contained the following clause: "if the assured is not
the sole and unconditional owner of the property insured,
or (if said property be a building or buildings) of the land
on which such building or buildings stand, by a sole, un-
conditional and entire ownership and title, and is not so
expressed in the written portion of the policy,—then, and in
every such case, this policy shall be void."

The instrument concluded as follows: "This policy is
made and accepted upon the above express conditions, but
shall not be valid unless countersigned by the only author-
ized agent of the Clay Fire & Marine Insurance Company,
at Chicago.   In witness whereof, the said Clay Fire &
Marine Insurance Company have caused these presents to
be signed by their president, and attested by their secre-
tary, in the city of Newport and state of Kentucky.   Wm.
Robson, President, D. Wolf, Secretary.   Countersigned at
Chicago Ill., this 2d day of April, 1873.   H. Martin, gen'l
agent."   The ownership of defendant in error, or its
interest, was not otherwise expressed in the policy than by
the pronoun "their," in the description.

CLAY FIRE & MARINE INS. CO. *v.* HURON SALT & LUMBER
MANUFACTURING CO.

The insurance company pleaded the general issue to the declaration, without any affidavit denying or questioning the execution of the policy, but added a notice that they would prove and insist that when the policy mentioned in the declaration was issued, the plaintiff corporation was not the entire, unconditional and sole owner of the property insured; also, that the interest of the plaintiff corporation in the property was not expressed in the written part of the policy, whereby the policy was void on delivery; that on or about the first of April, 1868, the plaintiff corporation, by Charles M. Smith, its president and agent, by writing in his or its name, sold the property described and intended to be insured by the policy in question, to John W. Babcock, who went into possession under the contract, and at the date of the policy, and when the loss happened, was equitable owner and entitled to conveyance and possession; that the plaintiff corporation was fully paid by Babcock for the property, and at the date of the policy, and at the time of the alleged loss, had no interest except that of trustee of the naked legal title; that none of said facts were described in the application, or expressed in the written part of the policy; that the contract of sale was made and executed in the individual name of said Charles M. Smith, but was made by him with the knowledge and assent of the plaintiff corporation, and for its benefit; that said Babcock paid for the property within the times as written, or as extended by said Charles M. Smith, on behalf of his corporation, and that said George C. Smith had full notice of all the facts; and further that said George C. Smith had no insurable interest at the date of the policy, or at the time of the loss, and that no proof or statement of any interest of his in the property, or in the policy, or in the money claimed on the policy, has been furnished to the insurance company.

The plaintiff corporation at the trial first produced Mr. Rogers as a witness, and he testified that he took charge of the plaintiff's business on the fifth of September, 1872,

and at the same time took possession of the insured property, and so continued until it was destroyed by fire on the 21st of June, 1873; that he operated the property during that interval in the interest of the plaintiff corporation, and knew of the insurance, and he identified the policy.

This instrument was then offered in evidence, when the insurance company objected on three grounds: *First*, that the declaration counted on a policy made by a corporation formed and existing under the laws of Kentucky, and the execution of the policy had not been proved; *second*, because no proof had been given of authority of such company to do business in this state; and, *third*, that the policy did not appear to have been made in Bay county, but in Illinois.

The court admitted the policy against these objections, and an exception was taken. It is not important to pass upon these objections, but I shall briefly notice them. The law is distinctly settled against the ground first stated.— *The Peoria Marine & Fire Ins. Co. v. Perkins, 16 Mich., 380 ; The People v. Johr, 22 Mich., 461.*

The second ground is not explicit, but we suppose the point intended was, that it was incumbent upon the plaintiff below, as a preliminary to the introduction to the policy, to show that the defendant insurance company, when it assumed to insure the property in question, and took from the assured the money for so doing, was not acting in plain derogation of our laws, and at the same time committing a gross fraud. The statement of the proposition conveys its own refutation. It was not admissible for the insurance company to insist upon a preliminary express showing by its contractee that in insuring it acted honestly, and where it was lawful for it to act. It was to be presumed, and certainly as against itself, in the absence of contrary proof, that in making the insurance it acted at a place where it would be lawful rather than unlawful, and in good rather than bad faith. In saying this much it is not admitted

that the point could be maintained upon any reasonable theory or any proper view of the facts, and it is not deemed needful to spend time in multiplying reasons against it.

The third ground of objection is obscure. We can only suppose it was meant to claim that the contract was alleged to have been made in Michigan, whilst the instrument offered purported to have been made in Illinois, and hence there was a variance. The point is extremely technical, and does not commend itself to the court. Wherever the contract was made, the right to sue upon it was not local. That right was transitory. If, in fact, as the objection claimed, the insurance was effected in Illinois, the contract was liable to be sued upon here.

But the essence of the objection would seem to be found in the terms of the special count of the declaration. It is there stated, under a *videlicet*, that the contract was made at Bay City, in the county of Bay, and a statement of the true place was not inserted before the *videlicet*. If the latter had been done the entire ground of objection would have been wanting. As it was, it is most certain that no body was misled or surprised. This is evident from the notice of defense, and the whole course of the trial; and our rule in regard to declaring on policies was intended to get rid of such refinements in this class of cases. The ancient doctrine of pleading, in regard to venue in transitory causes of action originating abroad, was highly artificial, and stuffed with fictions.—*Mostyn v. Fabrigas, and notes, 1 Smith L. C.; Tidd's Prac., 4 ed., 363; 1 Spence Eq. J., 699.*

Without laying down any general rule, I am of opinion that the ruling of the court upon the point here afforded no cause for complaint.

The policy having been admitted, proof of loss was made, and evidence given from the records of deeds, which served to show that the legal title of the insured property was in the plaintiff corporation, and the case was rested.

The defense then produced John W. Babcock as a witness, who identified and proved the written contract of sale mentioned in the notice annexed to the plea. He also testified that he went into actual possession under the contract, on the 3d of April, 1868, and continued in possession until about the 4th or 6th of September, 1872; that he made valuable improvements, and among others, built about seven thousand dollars' worth of docks.

The defense then offered the contract in evidence, and along with it offered to make proof of the facts stated in the notice of defense, as to the equitable title of Babcock. The offer was rejected, and, as would seem, on the broad ground that the retention of the legal title, although Babcock had the complete equitable interest, and was positively entitled to have the legal title transferred to him, was sufficient, and that the right ascribed to Babcock would not be any matter of defense in view of the terms of the policy.

After this rejection the insurance company sought to defend by showing that when it insured, and when the loss happened, it had not complied with our laws prescribing the terms on which agents of foreign companies may act here, and this was refused.

The defense in a request to charge also insisted that, as by the terms of the policy any loss occurring was made payable to George C. Smith, as his interest might appear, and as the suit was prosecuted for his use and benefit, no recovery could be had without proof of some legal or equitable interest by him in the property insured at the time of the loss.

Although the two latter points are not material to the disposal of the case, it may be expedient to notice them briefly, because they may be agitated hereafter.

In regard to the first of these, it is sufficient to say, without looking further, or seeking other grounds, that the contract of insurance here purported to have been made

in another state, and that the defense explicitly assumed
such to be the fact. The contract was personal and not
real, and although it had relation in a certain sense to
realty, it was not operative upon the estate, but merely as
an agreement to pay money in case the erections, or other
property specified, should be damaged by fire. The cir-
cumstance that the liability to pay was made to depend
upon an event to real property here, did not make the con-
tract a Michigan contract, or in any legal sense make this
state the place of performance by the insurance company.
And the further circumstance, that the contractee was a
Michigan corporation, did not impress upon the contract
the quality of locality, so as to cause our laws in regard
to business done here by agents of foreign companies to
affect it in point of law.

The statute does not assume to forbid the making of
contracts of insurance abroad upon property here, nor does
it assume to invalidate such agreements. What it enacts
is, that " it shall not be lawful for any person or persons
to act within the state as agent or otherwise, in prosecut-
ing or receiving applications for insurance, or in any man-
ner to aid in transacting the business of fire or marine
insurance for any company, association or individual, not
incorporated in this state, without," etc.—*Comp. L.*, § *1683.*
Another provision provides for punishing by fine every per-
son violating this law.—§ *1689.* The law applies to opera-
tions within the state, and against the representatives of
foreign incorporated and unincorporated interests, and
of domestic unincorporated ones. The defense atttempted
on the ground suggested by the offer *of* proof, is a very
ungracious one, and it is more than questionable whether
it could have prevailed even if the contract had appeared
to be a Michigan contract. Without assuming to decide
the point, and without touching upon the possibility of
shutting out the defense as an attempt by the insurance
company to take advantage of their own misconduct, it

lies in our way to remark, that there is much room for claiming that our statute was not intended to make void at the election of insurers, and does not make void at their election, such insurances as they may effect here without having complied with the regulations in question.

The point raised by a request to charge, as before mentioned, is not well taken. The proof was silent as to any right or interest in any one but the plaintiff.

It is not very plain what object the pleader had in introducing the expression "for the use and benefit of George C. Smith," into the declaration. It appears only in the commencement, and then only as an adjunct to the description of the plaintiff. No assignment is set forth, and there is no allusion in the body of the declaration to any other interest or title than such as the plaintiff held. On the contrary, the whole declaration was constructed on the theory that the corporation plaintiff possessed the entire interest, and was exclusively entitled. As matter of pleading, the epithet in question would seem to have no force whatever. It might possibly be contended that in point of fact, as between the plaintiff and Smith, the latter was entitled, by some arrangement short of an assignment, to the benefit of what might be recovered, and that this phrase was intended as notice on the face of the record, to the insurance company, that the suit was for his benefit, so as to preclude any collateral dealing between the two corporations to his prejudice. Be this, however, as it may, the two companies were the litigants upon the record, and the expression in question was not of force to make the issue different from what it would have been if the phrase had been left out.

The occurrence in the policy of the direction to pay to George C. Smith, as his interest might appear, did not necessitate proof of any interest by him in the insured property. The insurance was not made with him, but with the salt and lumber company. They paid the consideration and were the promisees. The expression in the policy

in regard to paying to Smith as his interest might appear, seems to have been chosen as a mode of appointing that payment should be made by the insurance company to him to the extent of some claim he had or was expected to have against the assured.—*Bates v. Equitable Ins. Co., 10 Wall., 33.* Whatever might be paid to him consistently and in accordance with his claim against the assured, which this appointment contemplated, would be a payment to the assured.

No interest of Smith appears to have been contemplated as the subject of the insurance, and no interest by him in the property insured was made a condition of the right of the assured to assert a remedy in the policy. His chance and the right of the assured were not intended to depend upon his having an insurable interest in the property, but upon the requisite ownership of the assured.

We come now to the offer of the defense to prove that Babcock held the entire equitable estate and interest and the right to be immediately invested with the legal title, and that this bare legal title then due to Babcock was the only badge of ownership which the assured possessed.

As the offer was refused, we must consider the case as though the fact proposed to be shown had been established. And it must be borne in mind that the question is not, whether the salt and lumber company, as lawful possessor for the time being of the bare legal title, had a scintilla of insurable interest, but it is, whether the clause which insisted that it should be stated in the policy, if the fact were so, that the assured was not the sole and unconditional owner by a sole, unconditional and entire ownership and title, was satisfied by the facts as we must assume them to have been under the offer of proof and the statement in the policy that the property was "their" property?

If it was *not*, then the policy by its own terms was made ineffectual, and the plaintiff corporation was not entitled to recover.

After much consideration, I am unable to concur with the circuit court upon this point.   No reasonable interpretation of the policy has been intimated or has suggested itself which will harmonize the requirements of the policy, the statement as to ownership in the clause describing the property, and the condition of things contemplated by the offer of proof.   The express statement in regard to ownership was not, when viewed in connection with the subsequent clause, a correct statement.   It gave no intimation of any outstanding right in Babcock, or in any body else. It conveyed no other idea than that of complete and exclusive ownership by the salt and lumber company.   There was no qualification whatever.   The matter will appear in the clearest light by reading the statement in the beginning of the policy, that the property was " their " property, in connection with the clause before quoted, requiring it to be stated, if true, that it was not their property by entire ownership and title, etc.

When thus examined, the policy will be seen to import that the salt and lumber company was not merely owner, but owner by a sole, unconditional and *entire ownership and title*.

At this very time, however, as must be conceded for the purpose of the question, Babcock's right was in every way so ample and complete that a statement in the policy that the property belonged to him would have been warranted. Certainly it cannot be claimed that a party holds by a sole, unconditional and entire ownership and title, when in truth another at the same time has so complete a right and interest that he may be rightly considered as owner.

The point appears too clear to justify elaborate discussion.   Among a number of cases having some bearing, only two will be noticed.   The first is the *Columbian Insurance Co. v. Lawrence, 2 Pet., 25.*   The question arose there upon the offer of insurance by the applicants, the policy having followed it.   The property was mentioned as " be-

longing to Lawrence and Poindexter." It was in fact occupied by them, but they held one-half of one-third under a lease for three lives, renewable forever, and one-half of the other two-thirds as mortgagees, and the other moiety under a contract of purchase which had not been complied with. The court, by *Chief Justice Marshall*, said, " the offer describes the property as belonging to Lawrence and Poindexter, and states it afterwards to be the stone mill. It contains no qualifying terms which should lead the mind to suspect that the title was not complete and absolute," and he afterwards adds, " the assured, then, have not proved such an interest as is described in the original offer of insurance."

The other case is *Hough v. City Fire Insurance Company, 29 Conn., 10.* There the applicant, Samuel W. Hough, described the property as " his dwelling house," and it was likewise so described in the policy. The policy contained the following condition: ." If the interest in the property to be insured is not *absolute*, it must be so represented to the company and expressed in the policy in writing; otherwise the insurance shall be void."

It appeared at the trial that Hough's ownership was similar to that claimed for Babcock in the case at bar. The legal title was in another, with whom Hough had made a parol contract to purchase for a fixed price. He had agreed absolutely to pay, had paid part, had entered as purchaser and made valuable improvements.

The court were of opinion that as he had a right to the property and the power by law to enforce that right, it might properly be denominated his. Among other observations, the court said: " The evidence conduced to prove that the plaintiff's interest in that property was an absolute interest. That is an absolute interest in property, which is so completely vested in the individual that he can by no contingency be deprived of it without his own consent, and by this contract with Eliakin Hough,

and its part performance, the plaintiff had acquired a right to the whole property, of which he could not be deprived without his own consent. So, too, *he* is the *owner* of such absolute interest who must necessarily sustain the loss if the property is destroyed."

If Hough, as held in this case, had an absolute interest, and was so far owner that the property could rightly be described as *his* property in an application for insurance, and in a policy, most clearly Babcock, if in the position contemplated by the offer of proof, held an absolute interest, and was in a situation which would have justified describing him *as owner*, in the policy in suit, and the salt and lumber company was not at the same time holding by a sole, unconditional and entire ownership and title.

The view taken disposes of the case, and renders a new trial necessary. The judgment should be reversed, with costs, and a new trial awarded.

CAMPBELL, and COOLEY, JJ., concurred.

CHRISTIANCY, J., did not sit in this case.