# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## BROOKE, CLERK, V. TURNER.

### MARCH 17, 1898.

#### Absent, Cardwell, J.

1. DELINQUENT LANDS—*Purchase from the Commonwealth—Cash Sale.*— Under the Act of Assembly approved January 29, 1896, for the purchase of real estate previously purchased by the Commonwealth for delinquent taxes and levies, the applicant to purchase must tender the purchase money along with his application. While the Act contains no express provision on this subject, a cash sale is in accordance with the settled policy of the State on the subject, and this policy will not be departed from unless the statute, expressly or by fair implication, requires it.

Error to a judgment of the Corporation Court of the city of Roanoke, rendered November 8, 1897, in a proceeding by *mandamus* wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Watts, Robertson & Robertson, Cocke & Glasgow* and *Scott & Staples,* for the plaintiff in error.

*J. S. Ashworth,* for the defendant in error.

RIELY, J. delivered the opinion of the court.

The defendant in error filed with the clerk of the Corporation Court of the city of Roanoke an application under the act of

January 29, 1896 (Acts 1895-'96, ch. 179, p. 219), amending
section 666 of the Code, as amended by the act of March 5, 1894
(Acts 1893-'94, ch. 635, p. 737), for the purchase of certain
real estate that had been previously purchased by the Common-
wealth in the name of the Auditor of Public Accounts at the
sale made thereof for delinquent taxes and levies.

The clerk refused to make and issue copies of the application
for service on the person in whose name the real estate stood at
the date of the sale to the Commonwealth, as provided in the
act, upon the ground that the application was not accompanied
with the purchase money.

The defendant in error thereupon applied to the said court
for the writ of *mandamus* to compel the clerk to make and issue
the copies of the application, and the court so ordered.    To this
order a writ of error was awarded by this court.

The question for decision is: Does the act require that the
purchase money shall accompany the application?    And if not,
when does it require the money to be paid?

The act was imperfectly drawn, and its true construction, as
enacted, is not free from difficulty.

It nowhere prescribes expressly when the money shall be
paid, and the time of its payment is to be wholly fixed by impli-
cation.    In fact, the act makes no express provision from be-
ginning to end for the payment of the money.    No one, how-
ever, would contend for one moment that the applicant was not
required to pay for the land at some time.    To do so would be
preposterous.    The legislature intended by the act to provide
a way for collecting the taxes and levies for which the land
was delinquent.    The amount to be paid was definitely pre-
scribed, though the time of payment was not expressly fixed,
and the person, who might thus acquire the land, was described
as the purchaser of it.    Purchase implies a sale, not a gift.

It does not admit of question that the legislature intended
that the purchase money should be paid at some *definite* time,
for it would be unreasonable to suppose that it meant to leave

the time of payment to the mere will of the applicant. When, then, did it intend that the money should be paid? It is not expressed in the act; when is it implied?

In the absence of any express declaration in the act or plain implication from its provisions fixing the time of the payment, it is legitimate and proper to consider the object of the statute and the settled policy of the legislature in its legislation for the sale of real estate returned delinquent for the nonpayment of taxes and levies, as manifested in the enactment of previous statutes on the subject.

Taxes are a necessity for the maintenance of the government, and it is of the utmost importance that they be regularly and promptly paid. When not voluntarily paid, it is reasonable to presume, nothing appearing to the contrary, that the means provided for their forcible collection would be such as to insure their certain and speedy collection.

A review of the general legislation by the State in the past in regard to the sale of lands delinquent for the non-payment of taxes and levies will show that they were required to be sold for cash (Code, 1873, ch. 38; Code, 1860, ch. 37; Code, 1849, ch. 37; and Laws of Va. (1814) note, p. 187, as to previous statutes), and they are still required to be so sold. Code of 1887, sec. 638. The purchase money was and is still required to be paid at the time of the sale, notwithstanding the fact that subsequent proceedings had and still have to be taken by the purchaser to obtain the legal title. Code, secs. 654 and 655.

The act of March 5, 1894, while providing for the purchase by any one at private sale of land bought by the Commonwealth in the name of the Auditor of Public Accounts, still required that the sale should be for cash.

The requirement of the payment of the money at the time of the sale, or at the inception of the transaction, has been the settled policy of the legislature for over a century at least, and the act of January 29, 1896, nowhere discloses an intention to

depart from this policy. We may not lightly presume that a policy so long established has been departed from or abandoned.

It is a general principle of construction, applicable to all statutes, that the general words of an act are not to be so construed as to alter the previous policy of the law, unless no sense or meaning can be applied to those words consistently with the intention of preserving the existing policy untouched. Equivocal words will not be accepted as implying an intent to depart from a settled statutory policy. Sutherland on Stat. Con., sec. 407; *Minet* v. *Leman*, 20 Beaven, 269; *Attorney General* v. *Smith*, 31 Mich. 357; *Blackwood* v. *Van Vleit*, 30 Mich. 118; and *Small* v. *Small*, 129 Pa. St. R. 366.

So great a change in the policy of the State, as would be the departure from a sale of real estate for delinquent taxes and levies for *cash* to a sale on *credit*, should not rest on inference or implication from ambiguous words or dubious provisions, but should appear from the express mandate of the legislature, or by irresistible implication from the language of the amendatory act. If it was not intended by the act in question that the money should be paid at the inception of the transaction in accordance with the settled policy of the State, much doubt would exist as to whether it was intended that the money should be paid at the expiration of thirty days after the service of the application on the person in whose name the land stood at the date of the sale to the Commonwealth, within which period he was allowed to redeem the land, or when the deed should be made to the applicant, which might be at any time within one year after the purchase of the land. It would be unreasonable to attribute to the legislature, contrary to the very purpose it had in view of providing a method for the certain and speedy collection of the unpaid taxes and levies, the deliberate intention to postpone their payment by a sale of the land upon an indefinite credit.

In view of the ambiguous nature of the act, it is to be construed in the light of the established policy of the State, and, while such policy would not prevail over a clear and distinct

enactment instituting a different policy, it should go far to explain any equivocal words or doubtful provisions.

So far, however, from a departure from the settled policy being expressed or necessarily implied, the act of January 29, 1896, is wholly silent as to the time the money for the land should be paid by the applicant for its purchase. Its silence in this respect can only be accounted for upon the theory that the legislature did not intend to depart from the long established policy that the sale should be for cash, in which case there would be no occasion to specify expressly a time of payment, or to provide any means for enforcing the payment of the money, just as none has been provided in the past, and is not now provided when real estate is publicly sold by the treasurer of the county or corporation for delinquent taxes and levies, and as was not provided in the act of March 5, 1894.

The implication from the absence of any such provision is irresistible that the legislature intended that the money should be paid at the inception of the transaction, which would render an express specification of the time of payment, or any provision for enforcing its payment, superfluous. Bearing in mind the established policy of the State, the absence of such a provision would seem to be conclusive of the intention of the legislature, and to settle that according to the true interpretation of the act with respect to the matter in dispute, the applicant should accompany his application to purchase with the money required by the act to be paid. This result best harmonizes the act under review with the general tenor and spirit of the legislation it amended, and, this being so, it is the construction which should be given to the act. Endlich on Int. of Stat., sec. 40; Sutherland on Stat. Const., sec. 323; and *Griffin's case*, Chase's Dec. 364.

It not being, therefore, the duty of the clerk, in default of the payment of the purchase money, to make and issue copies of the application of the defendant in error to purchase the land, the judgment of the Corporation Court must be reversed, and the petition for the writ of *mandamus* be dismissed.

*Reversed.*