## EDWARD ORDWAY

*v.*

# IRA C. CHACE, GEORGE ENGERT, J. PARK HENDERSON, DORMAN T. WARREN and THE AGRICULTURAL INSURANCE COMPANY.

[Decided December 28th, 1898. Filed June 10th, 1899.]

**1.** Where a policy provides that it shall be void if the interest of insured be other than unconditional and sole ownership, and his interest is that he has given his bond for a debt secured by a mortgage of the premises, and is the holder of a subsequent mortgage made by the owner, the company is not liable, either to insured or the owner.

**2.** A policy is not contrary to public policy because it provides that it shall be void if insured conceals or misrepresents any material fact or circumstance concerning the insurance or the subject thereof, or if his interest in the property is not truly stated, or if his interest be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by him in fee.

**3.** To sustain a policy not made to the owner of the property because the company had notice thereof, actual notice must be shown.

**4.** A property-owner procured a policy in the name of a purchaser, describing it as located "at the head of Union street in Montclair, N. J., and occupied as a dwelling, and $1,000 on a frame stable situate on said premises." A broker, on the expiration of a prior policy, which he had procured on the property, applied to the same company for a policy in the owner's name, describing the property as located "at the junction of Upper Mountain avenue and Union street in Montclair, N. J." The agent who issued this policy knew nothing of the first, which was issued by his predecessor, and before issuing it he caused a survey of the premises to be made.—*Held*, that because of the variance in the descriptions the company was not charged with notice that both policies were issued on the same property.

**5.** Where an insurer issued two policies on the same property by mistake, caused by a variance in the descriptions, the policies cannot be reformed, since there was no meeting of minds, and the company did not consent to insure the same property twice.

**6.** Where a policy was issued to a mortgagee on the supposition that he was the owner of the property, and the premium was paid by the owner, without the company's knowledge, its failure, after notice of the facts, to cancel the policy, does not estop it from declaring the policy void as to the owner according to its terms, where it was still valid as to the mortgagee, to whose rights the company was entitled to be subrogated on payment of a loss.

On foreclosure.   Heard on pleadings and proofs.

*Mr. William W. Ames,* for the complainant.

*Mr. Edwin B. Goodell,* for the defendant Warren, cited *Waring* v. *Loder, 53 N. Y. 581; Franklin Fire Insurance Co.* v. *Martin, 11 Vr. 568; Trade Insurance Co.* v. *Barracliff, 16 Vr. 543; Hartford Fire Insurance Co.* v. *Haas, 87 Ky. 531; Brothers* v. *California Insurance Co., 3 N. Y. S. 89; Agricultural Insurance Co.* v. *Potts, 26 Vr. 158; Martin* v. *Jersey City Insurance Co., 15 Vr. 274; Miller* v. *Hillsborough Mutual Fire Assurance Association, 17 Stew. Eq. 224; Dewees* v. *Manhattan Insurance Co., 6 Vr. 366.*

*Mr. C. H. Gest* (of New York), for the defendants Henderson and Engert, cited *Carson* v. *New Jersey Insurance Co., 14 Vr. 300; Rich. Ins.* §§ *63, 69, 70, 75, 78; Encycl. L. vol. 20 p. 713 n. 3.*

*Mr. James Buchanan,* for the Agricultural Insurance Company, cited *Martin* v. *Insurance Co. of North America, 28 Vr. 623; Hare* v. *Headley, 9 Dick. Ch. Rep. 545; 7 Dick. Ch. Rep. 496; 4 Am. & Eng. Encycl. L. (2d ed.) 962; Green* v. *Stone, 9 Dick. Ch. Rep. 387, 399; Rowley* v. *Flannelly, 3 Stew. Eq. 614; 11 Am. & Eng. Encycl. L. (1st ed.) 343, 344; Bennett* v. *St. Paul Co., 26 Vr. 377; Sun Insurance Co.* v. *Greenville Building and Loan Association, 29 Vr. 367.*

PITNEY, V. C.

This suit is for foreclosure of a mortgage dated January 28th, 1893, for $11,500, upon property in Montclair, Essex county, made by the defendant Chace (and securing his bond) to the defendant Warren, and by him assigned to the complainant, Ordway.   The defendant Warren is the holder of a second mortgage, dated February 21st, 1896, for $4,500, made by the defendant Engert, to whom Chace on that day conveyed the premises subject to the complainant's mortgage, and who gave

back the mortgage to Chace which he assigned to Warren. After the giving of the second mortgage the premises were conveyed by Engert to his wife, and by her to the defendant Henderson.

The only contest arises over a claim made by the defendant the Agricultural Insurance Company to a right of subrogation to a part of the amount due upon the complainant's mortgage, which claim is based upon the fact that the insurance company had written a policy of insurance upon the dwelling upon the premises, which was held by the complainant, Ordway, as mortgagee, and the dwelling having been destroyed by fire the insurance company was obliged to pay, and did pay, the sum of $4,128 to the complainant as his share of the loss.

The legal ground of the claim of subrogation is found in a clause in the contract of insurance which provides as follows:

"Whenever this company shall pay the mortgagee any sum for loss or damage under this policy, and *shall claim that, as to the mortgagor or owner, no liability therefor existed*, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee the whole principal due or to grow due on the mortgage, with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee to recover the full amount of claim."

The allegation of the insurance company is that it was under no liability to pay the loss by fire to the then owner, Henderson, or to Chace, the mortgagor, because the policy was issued to the defendant Chace after he had conveyed away the title to Engert and while Engert was the owner, and that fact was not disclosed to the insurance company or stated in the policy.

One of the conditions of the policy is as follows:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; * * * *or if the interest of the insured be other than unconditional and sole ownership;* or if the subject of insurance be a building on ground not owned by the insured in fee-simple."

At the date of the policy the only interest of Chace in the premises was, first, that he had given his bond for the debt secured by the mortgage held by the complainant, and second, was the holder of the mortgage made by Engert.

There can be no doubt that upon the facts so stated the insurance company was not liable upon this contract to either Chace or Henderson, the actual owner of the fee. *Martin* v. *Insurance Co., 23 Vr. 623; Sun Insurance Co.* v. *Greenville Building and Loan Association, 29 Vr. 367; 2 Beach Ins.* §§ *630, 631; C. F. Insurance Co.* v. *Manufacturing Co., 31 Mich. 346; Dowd* v. *Insurance Co., 41 Hun 139.*

The contract used is, and was at the time, the standard policy in common use, approved by the commissioner of insurance, under section 191 of the act concerning insurance, and there is no ground in the case for the assertion of fraud or concealment.

Much of the learning found in the books as to insurable interest and the like, has been rendered obsolete by the adoption of this standard policy.

The distinction is now well established between mere insurance brokers whose business it is to place insurance for the insured, and an authorized and acknowledged agent of the insurance company who has authority to fill up and issue policies. A clause in this policy provides that no mere agent can waive the terms of the policy, and that clause has had the effect of also rendering obsolete much of the learning with regard to waiver of conditions and notice to brokers.

There can be no doubt that it is of much importance to underwriters that they shall be informed of the exact state of the ownership of the property they insure, especially in view of the keen competition and low rates of premium which now prevail.

The contract in question is one which the insurance company had a right to insist upon, and it is not contrary to public policy. It accords with public policy in that it tends to prevent the destruction of property by fires which are the result of carelessness and sometimes of criminal action.

The present is clearly distinguishable from that class of cases found in the books, where the insured was seized of a mere equ -

table, but in other respects complete and unassailable, title, so that the whole loss of a fire would fall directly upon him, as where he is in possession under a contract of purchase, and has paid the whole or a part of the purchase-money, and is personally liable for the remainder.

It is also well settled that the condition in a policy as to ownership, like the one here to be dealt with, is not satisfied with a mere insurable interest, such as mortgagee or the like, which Mr. Chace had in this case. In the case above cited, reported in *31 Mich.*, the court said that the question was not whether the assured had an insurable interest in the property, but whether that interest was "other than an unconditional and sole ownership."

In *Van Schoick* v. *Niagara Fire Insurance Co., 68 N. Y. 435* (at *p. 436*), Mr. Justice Folger uses this language in speaking of a somewhat similar clause: "It is a condition precedent, lying at the threshold of the making of the contract, and which, if not then performed or not then obviated, prevents the formation of an enforceable contract. It is obvious that this building being on leased ground, the very moment that the policy passed from the defendant to the plaintiff the insurance on it was void if the condition holds. They were concurrent acts, the delivery of the contract and a breach of this condition, so that, at the same instant that the defendant said we insure this building, at the same instant the condition was broken and the insurance was void. So that if nothing is shown to break the rigid effect of this condition, there never was any insurance by this defendant upon that building."

If, then, the policy was void as to Chace or Mrs. Engert, the then owner of the premises, it is clear that the insurance company's right of subrogation must prevail. *Hare* v. *Headley, 9 Dick. Ch. Rep. 545.*

This last proposition is not challenged by the defendants Warren, the holder of the second mortgage, and Henderson, the owner of the equity of redemption, who put their case upon the ground that the policy was not void.

They contest the claim of the insurance company, based upon

the above-stated facts, on the ground that the insurance company had notice and knowledge, at the time that it wrote the policy to Chace, that he was not the owner of the premises, and that the owner at that time was Mrs. Engert, the wife of the defendant George Engert.

The burthen of proving such notice and knowledge is, of course, on the parties alleging it, and such burthen, in my judgment, cannot be sustained in this case by anything short of proof of actual knowledge, as distinguished from constructive or implied notice, such as arises out of statements in a chain of title or the record of mortgages or conveyances. The question is whether the insurance company's officers had in mind, at the moment of executing this policy, the fact that the title to the land was not in Chace, but was in another person. To hold otherwise is to fasten upon the insurance company a contract that it never consciously entered into, and *non constat,* that it would have been willing to enter into. With this premise I proceed to consider the facts, which in detail are as follows:

Chace was a gentleman engaged more or less in the business of buying building lots and erecting thereon dwellings and selling the same, and in carrying on that business had occasion to procure a considerable amount of insurance. For that purpose he employed as his broker one Peck, who has since died. Peck was himself not the agent of any insurance company, with power to write and issue policies, but was a mere broker, whose business it was to procure and place insurance for clients. And the dealing between Chace and Peck must be viewed in the light of the well-known fact that insurance brokers of that class always keep a record and abstract of the policies which they procure for their clients and watch their expiration and look after their renewals.

The complainant's bond and mortgage were given, as we have seen, in 1893, and a policy of insurance collateral thereto had been procured from the Germania Insurance Company, and apparently expired in the latter part of May, 1896. The complainant's mortgage, by its terms, required the keeping up of the

insurance, and Chace's personal liability on the bond made him interested in the same direction.

When the policy of insurance in the defendant insurance company for $6,000, held by the complainant (Ordway) as collateral, was shown to Mr. Chace on the stand, he swore that he procured that policy through Peck on behalf of Mr. Engert, but afterward he swore that Peck procured it without his personal knowledge; that he subsequently recognized Peck's conduct in that behalf by paying the premium to him. Taking the latter as the correct statement of what occurred, it must be presumed that Mr. Peck either had in his possession the old policy in the Germania Insurance Company, or such a record of it as informed him of the description of the property insured, the amount of insurance, and that it was held as collateral by Mr. Ordway, as mortgagee, for it is entirely clear that Peck, on or about the 29th of May, 1896, made a formal written application to the Agricultural Insurance Company for a policy covering the building in question. That company had an office in New York city, and an authorized agent there, named William Morgan, who was entrusted with blank policies of insurance, and had authority to fill them up and issue them. Peck's application to Morgan was in writing, on a blank such as is used by the insurance company to contain a description of the property, which its officers paste on the policy instead of writing it out at length. (That was done in this case.) It reads thus:·

"*Ira C. Chace*, $6,000, 3 years, May 29, '96, at 60 cents; $6,000 on the frame building and additions, &c., *at the junction of Upper Mountain avenue and Union street in Montclair, N. J., and occupied as a dwelling.*"

Then follow other clauses about the use of combustibles, and other insurance permitted, and a lightning clause.

It is fairly inferable that this description was the same as that written in the policy in the Germania company. The evidence discloses no other source from which Peck could have obtained it. Its importance will appear presently.

It is admitted on all hands that this application was properly construed by the insurance company as stating Chace to be the owner of the premises.

On that application the policy in question was issued to Chace, and by its terms declared that the insurance company "does insure Ira C. Chace," &c.   It was delivered to Peck.   In a few days it was brought back by Peck, who required that it should be made payable to the complainant as mortgagee.   The insurance company's agent then—June 5th, 1896—pasted on it in the usual way a slip containing a clause known as the mortgagee clause, making it payable to Mr. Ordway as mortgagee as his interest should appear, and also the clause above quoted providing for subrogation.   The amount of the premium was charged by Morgan to the broker (Peck), and paid by him in due course of business.   It was repaid to Peck by Chace, who, as he swears, subsequently put it in a bill against Engert, and it was paid by Engert to Chace.

Previous to that, on the 9th of April, 1896, Chace, through Peck, had applied to the defendant insurance company for a policy of insurance, in favor of George Engert, for "$4,000 on a frame building, &c., *at the head of Union St., in Montclair, New Jersey, and occupied as a dwelling, and $1,000 on a frame stable situate on said premises.*"

At that time a gentleman by the name of Perrin, who was not called as a witness, was acting as agent for the insurance company and issued a policy accordingly.   Whether he occupied in New York the same office that Mr. Morgan did does not appear.   So far as the evidence indicates, however, *it does* indicate that he did occupy the same office, but that he was succeeded by Mr. Morgan.   This policy was, by force of a slip pasted upon it similar to that on the later policy, made payable to Ira C. Chace as mortgagee, and passed with his mortgage to the defendant Warren when he assigned it to him, which, it is worth noticing, was on June 6th, the day after the mortgagee clause was attached to Mr. Ordway's policy.

The dwelling covered by this policy of April 9th, 1896, is confessedly the same as that covered by the policy of May 29th, 1896, with the addition of the stable; but it will be seen by comparing the descriptions that the identity is not apparent on the face of the description, and could only be discovered by

going upon the ground. Not only was the description of the premises different, but the older policy covered a stable, which was not mentioned in the application for the second policy, and the name of the person insured was different, so that there was nothing in the writing to call the attention of the insurance company's agent to the identity of the premises.

Mr. Morgan swears that, at the time he underwrote the policy of May 29th, he did not know that the policy of April 9th, to Engert, had been issued, and this assertion is sustained by the fact that he caused to be made a particular survey of the premises before issuing the later policy. This he probably would not have done if he had known that his company held a previous policy upon the premises.

It does not appear distinctly or directly who was responsible for the variation in the description of the premises in the two policies. Presumably and inferentially Chace was responsible for it, since the policy of April 9th was issued upon a new application in the name of Engert, the recent purchaser of the premises, who, so far as appears, was previously unknown to Peck. Chace swears positively that he himself directed Peck to procure that policy. No attempt was made to account for the variation in the language, although it was pointed out at the hearing.

The ordinary course of business would have been for Chace, when he sold to Engert and took back a mortgage, to have directed Peck to take out a policy in Engert's name upon the same premises covered by the old policy issued by the Germania Insurance Company, of the contents of which there is no reason to doubt Peck had a record.

If Peck had known that the Engert policy was to cover the same premises as the previous Chace policy in the Germania covered, he would naturally have used the same description in making the application.

There was certainly no motive on Peck's part for making a different description, unless he intended to deceive the insurance company and induce it to insure for a larger amount than the premises were worth, and it cannot be inferred that he would practice such a deceit except at the request of Chace.

Ordway v. Chace.

There was no doubt a motive on Chace's part to secure a large insurance, arising out of the fact that he was interested in both mortgages; he was bondsman in one and the holder of the other, which he was presumably desirous to market by assignment, and which he did market on the 6th of June, 1896. It is fairly to be presumed that there was an over-insurance, for while the whole insurance was $10,000, the company paid on the loss only $4,128 on the one policy, and $2,724 on the other, or $6,852 in all. There was no direct proof as to the extent of the loss, but the defendants Warren and Henderson, in their separate answers, each speak of it as "caused by a conflagration which *nearly or quite destroyed* the dwelling-house."

My conclusion on this part of the case is that, under the circumstances, the insurance company did not have knowledge, and is not chargeable with notice, that the later policy of May 29th was issued upon the same premises as the previous one of April 9th, and that it is not responsible in anywise for the issuing of the policy to a man who was not the owner of the premises. In fact, I am unable to find in the evidence sufficient to even charge Peck, the broker, with such notice.

It is next urged that the issuing of the policy to Chace was a mistake of a character which this court will reform as against the insurance company, and leave was asked at the argument, and after the evidence was closed, to make the necessary amendment to the pleadings.

I am not sure that it would be fair to the insurance company to allow the amendment and consider the question of reformation without giving it a further opportunity to be heard. It produced its evidence and framed its case in view of the pleadings as they stand. But, be that as it may, I will consider the case as though it were competent to reform if the evidence warrants it.

Now, the reformation, as distinguished from the rescission of a contract, can only be decreed in the absence of fraud in the defendant, where the minds of the parties have met contractually, but a mistake has been made in writing out the contract in expressing the meaning, so as to make them appear to enter into

a contract which they have not entered into, and the reformation must result in making the contract correspond precisely with that upon which their minds have met. *2 Pom. Eq. Jur.* § *870; 3 Pom. Eq. Jur.* § *1376; Kerr Fr. 418, 419.*

Now, applying that simple rule here, the allegation of the defendants is that the minds of the parties met in insuring the owner of the premises for $10,000 on the one dwelling, first in the policy of April 9th, to George Engert, and subsequently in the policy of May 29th, to the same person as owner, and that they knew that the two policies covered the same premises.

This short statement of the case shows that it is not one for reformation, for it does not appear that the insurance company ever knowingly agreed to insure the premises twice to the same person, or that they would have done so had they known it.

If we should admit, for present purposes, that the officers of the insurance company knew, when they issued the last policy, that the dwelling-house mentioned in the two policies was the same, it still, in my judgment, would not follow that such knowledge showed that the company was willing to enter into the contract of insurance which the court is now asked to force upon it. It might well have been willing to insure the mortgagee of the first mortgage directly, with a right of subrogation, to the extent of $6,000, and at the same time insure the owner of the fee to the extent of $4,000, upon the same premises, and yet be unwilling to insure the owner of the fee to that extent.

The familiar rule is that the proof of the mistake and of the actual meeting of minds must be clear and convincing. *Hupsch* v. *Resch, 18 Stew. Eq. 657, 1 Dick. Ch. Rep. 609* and cases cited.

It does not appear at what time the officers of the company discovered that the policies covered the same premises. In support of the allegation that they did know it at some time before the fire, the defendants rely upon the fact that the insurance company reinsured the large policy of $6,000 in another company to the extent of $5,000, but just when this reinsurance was effected does not appear.

The defendants further urge that the fact that the company's

Ordway v. Chace.

officers did discover the real facts before the fire and did not at once cancel one or both of the policies, is a circumstance which works by way of equitable estoppel against the company.

I am unable to adopt that view. Both the policies were, by virtue of what is called the mortgagee clause, perfectly good and unassailable in the hands of the mortgagee, and the intention of both policies was to secure the mortgagees.

It is true that the insurance was paid by Engert, and that circumstance is relied upon by the defendants. But that important fact is not brought home to the knowledge of the insurance company. So far as it appeared to its officers, the premium was paid by Chace, and he was the bondsman in the first mortgage and the mortgagee in the second. The intention of the parties, so far as it appeared to the insurance company, was entirely carried out by retaining both the policies in force in their present form, and I see nothing inequitable in the conduct of the insurance company in so doing and at the same time relying upon the right to be subrogated to the first mortgage. It had been lured into an over-insurance, and I am unable to see that it was not justified in taking precisely the position it did.

Moreover, it had every reason to suppose that the peculiar situation was known to all the parties interested; and if the owner, who was presumed to know the situation, was not dissatisfied with it, and did not call upon the insurance company to rectify it, I am unable to see that it was the business of the insurance company on its part to volunteer to do so.

Another circumstance is to be noted here. Mr. Chace, in order to keep good the policy of $5,000 of April 9th, took it to the company's office on the 2d of July, 1896, and had endorsed thereon, " Interest now vested in Johanna Engert, and loss, if any, payable as before. H. H. Kellogg, per H. L. S." Now, he must have known at that time that the other policy had been taken out to secure the first mortgage, and the matter to be remarked is that he did not attempt to do anything to keep that policy good by having a note of the transfer of title endorsed upon it.

I will advise a decree that the insurance company is entitled

to subrogation to the rights of the complainant as first mort-
gagee, to the extent of its payment to him, with costs to be
added to the amount and form a part of its decree.

Of course, it must, if required, pay the whole amount due
complainant upon his mortgage and stand in his place.